UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:13-CR-47-GFVT-HAI-4 |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| EWING BOWLING, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 847), the Court considers reported violations of supervised release conditions by Defendant Ewing Bowling.

Judge Van Tatenhove entered a judgment against Defendant in March 2015 following a guilty plea to participating in a conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. D.E. 702. He received a prison sentence of 60 months, followed by a three-year term of supervised release. *Id*. Defendant began his term of supervised release on January 22, 2018.

**I.**

On December 4, 2018, the United States Probation Office (USPO) issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The report charges two violations. According to the Report, the probation officer conducted a home visit on November 5, 2018, and obtained a urine sample from Defendant. Defendant said the sample would likely test positive for methamphetamine, which it did. Defendant said he had used the drug as a "pick-me-up" at work, since he had been working long hours. Defendant signed an admission form.

Another meeting occurred on November 21. The probation officer "had prepared a modification to submit to the Court in which Mr. Bowling would be required to serve three weekends of intermittent confinement as a punitive measure for the above described urinalysis results." However, the officer obtained another urine specimen on this date which tested positive for methamphetamine upon instant testing. Defendant signed another admission form, stating that he had used methamphetamine four to five days prior to give him more energy for work.

Violation #1 charges a violation of the condition that Defendant not, among other things, "purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician." This charge is based on the positive drug tests of November 5 and November 21, 2018, and Defendant's signed acknowledgements that he had knowingly used methamphetamine. This is a Grade C violation.

Violation #2 charges a violation of the condition that Defendant not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's prior drug conviction, this violation charges Defendant with conduct that would be a federal crime, that is, possession of methamphetamine, a Schedule II controlled substance. Such conduct would be a Class E felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

The Court conducted an initial appearance on the Report, pursuant to Rule 32.1, on February 25, 2019, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 851. The United States moved for interim detention; Defendant argued for release. *Id.* The Court found that Defendant met his burden under Rule 32.1(a)(6) and released him on his current conditions of supervision. *Id.*

On March 5, the day before the scheduled final hearing, the USPO released an Addendum to the Report. The Addendum charges a third violation, a Grade C violation, for failing the follow the instructions of the probation officer. As the Addendum explains, the officer applied a sweat patch to Defendant's arm after the initial appearance and instructed him that, "should the condition of the sweat patch change in any way, he was to contact this officer immediately to advise." The Addendum explains that Defendant reported to the Lexington Probation Office on March 5. A urine screen tested negative. However, the sweat patch had become "partially separated from the skin" and a piece of tape was holding it on. Defendant stated that "on or about Saturday, March 2, 2019, the adhesive cover began to come loose," yet he did not inform the probation officer until the office visit three days later. The Addendum is accompanied by pictures of the partially-detached sweat patch. The sweat patch was sent for testing.

The final hearing on March 6 was converted to an initial appearance on the Addendum's Violation #3. D.E. 852. Defendant waived his right to a preliminary hearing on that charge. *Id*. He did not argue for release pending the final hearing, and he was remanded to the Marshal's custody. *Id*.

On March 21, the Court received a lab report on the sweat patch containing negative results for the tested controlled substances.

At the final hearing on March 22, 2019, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 854. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id*. He admitted that he had used and possessed methamphetamine and that he failed to inform his probation officer that the sweat patch had become partially detached. For purposes of Rule 32.1 proceedings, Defendant admitted the

3

factual basis for the violations as described in the Report and Addendum. In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established Violations #1, #2, and #3 under the preponderance-of-the-evidence standard of § 3583(e)(3).

## II.

The Court has evaluated the entire record, including the Report, Addendum, and accompanying documents, along with the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to participating in a conspiracy to manufacture methamphetamine, a Class C felony. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(B); 846; 851. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade B violation with respect to Violation #2 and Grade C violations for Violations #1 and #3. Given Defendant's criminal history category of II (the category at the time of the conviction)

4

and a Grade B violation,[1] Defendant's range under the Revocation Table of Chapter 7 is six to twelve months.

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b), (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Defendant's conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, the parties presented an agreed recommended sentence: four months of incarceration, followed by 90 days of inpatient drug rehabilitation. The parties proposed that he finish his current period of post-release supervision, scheduled to terminate on January 21, 2021. Technically, the four months of incarceration would be a downward departure from the Guidelines Range, and the 90 days of in-house treatment would be part of Defendant's supervised release period. But the parties argued that this penalty is reasonable under the Guidelines because the inpatient treatment would be "akin to custody" and "quasi-confinement."

The government first pointed out that methamphetamine use cannot be taken lightly. Using it as a "pick-me-up" is not a good excuse. And the government did not think treatment alone would be fully effective. Instead, imprisonment is warranted to more fully deter future criminal conduct, protect the public, and punish the breach of the Court's trust. The government also argued that Defendant needed to be removed from his environment for an extended period

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

5

so he could fully detox. The government supposed that four months would be plenty of time for Defendant to go through withdrawal without access to meth.

To support a downward variance, the government pointed to several mitigating factors. This is Defendant's first violation. He was compliant for a year. He has been generally respectful and cooperative with his probation officer. He has not been violent or erratic. He has been working on keeping his family together. He is willing and able to work.

The government therefore supported a penalty of incarceration plus treatment plus additional supervision. Additional supervision was recommended to ensure that the treatment had been effective. And, as noted, the government argued that the three months of inpatient treatment would be akin to custody, which would make the penalty feel to Defendant like a within-Guidelines penalty.

The defense argued that Defendant came prepared to stipulate to the violations regardless of the sentence. He assumed he would receive the statutory maximum penalty, but planned to stipulate nonetheless. The fact that his stipulation was not prompted by the agreement indicated he accepted responsibility for his behavior. Defendant also pleaded guilty to a high marijuana equivalence of drugs. The factual basis for this admission was entirely Defendant's own statements. So he has a history of accepting responsibility. The defense pointed out that Defendant's criminal history (Category II) began in his 30s and indicates no drug use besides alcohol until the underlying federal offense. Defendant did well on pretrial release and succeeded on post-conviction release for a year. The defense explained that Defendant has suffered. His wife left him (although they are reconciling) and his mother died. These were huge blows to his willpower.

The defense requested that Defendant receive a mental health evaluation. The defense asked for a condition requiring Defendant to work and a condition that he attend group counseling. The defense acknowledged that group counseling might conflict with the condition forbidding associating with felons.

Defendant addressed the Court. He said he was grateful, especially for his fine probation officer and counselor. He explained that his marital trouble and the loss of his mother contributed to his decision to use methamphetamine to provide more energy at work. He expressed his intention to "get this [drug addiction] out of me," and he is going to do it.

### IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).

The nature and circumstances of Defendant's underlying conviction are serious, of course. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). He admitted purchasing pseudoephedrine for others to manufacture meth. PSR ¶ 26. Judge Van Tatenhove sustained an objection to Defendant being a leader in the conspiracy.

Defendant's personal history and characteristics are relevant in this case. He is cooperative and eager to take responsibility. He would not be dangerous aside from his drug addiction. It is that addiction that feeds Defendant's danger to society. A penalty aimed at

7

rehabilitation will serve to lessen that danger and thereby protect society and deter future illicit conduct.

The Guidelines suggest that the primary wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). Here, new felony behavior—drug possession—is a trust breach that must be addressed. The recommended penalty is sufficiently serious to garner Defendant's attention. But it should also give him more tools to overcome his drug dependency.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court accepts the jointly recommended revocation penalty and recommends a sentence below the Range. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

In this case, a four-month revocation sentence (coupled with three months of treatment) appropriately addresses the sentencing factors. *See* 18 U.S.C. § 3583(e). While inpatient treatment is technically supervision, not custody, as the parties point out, Defendant will not be free to leave the facility. The parties agree that Defendant's history and character show that he poses less of a danger to society than many other offenders. A combination of incarceration,

treatment, and supervision is a fair and appropriate way to address Defendant's violations. Concerning Defendant's requests for additional conditions, the Court will recommend that Defendant receive a mental health evaluation. However, whether he will be referred to group counseling is a matter left to the discretion of the Probation Office. The defense requested a work condition, but the Court believes Standard Condition #5 of the existing Judgment is sufficient.

### V.

Based on the foregoing, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of all three violations.

(2) Revocation with a term of imprisonment of four months.

(3) A condition requiring compliance with all aspects and completion of a 90-day inpatient drug treatment program immediately upon release.

(4) Additional post-release supervision by the Probation Office until January 21, 2021.

(5) That Defendant be given a mental health evaluation.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for

consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 26th day of March, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge